23 C.C.P.A.(Patents)

## In re ARMSTRONG.

### Patent Appeal No. 3644.

Court of Customs and Patent Appeals.
June 8, 1936.

Spencer B. Michael, of Washington, D. C. (Charles S. Burton and Robert N. Burton, both of Chicago, Ill., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant has appealed here from the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner denying patentability in view of the prior art of claims 13, 17, and 19 of his application for patent relating to a mercury switch. A large number of claims were allowed, but none as broad as the claims here involved.

Claim 13 illustrates the nature of the subject-matter involved and is representative of the three rejected claims. It follows: "13. A mercury switch device having a chambered body member comprising two commercially pure iron parts insulatedly mounted one upon the other with means rendering the chamber enclosed gastight, and arranged for connection with a source of gas under super-atmospheric pressure, said insulated parts having respective conductive surface portions exposed interiorly of the chamber insulatedly spaced apart therein a substantial distance, said device being mounted for movement between two oppositely inclined positions; a body of mercury enclosed in the chamber in quantity sufficient to bridge the insulating space between said exposed surface portions, to establish mercury communications between them when the device is in one of said positions, and hydrogen gas compressed at a substantial degree in excess of atmospheric pressure sealed in said chamber."

The references relied upon are:

Tesla, 611,719, October 4, 1898.
Clark, 783,612, February 28, 1905.
Brown, 1,369,882, March 1, 1921.
Phelan, 1,598,874, September 7, 1926.
Stern, 1,746,369, February 11, 1930.

Two additional references, Machlett, 1,789,556, of January 20, 1931, and Badger, 1,691,912, of November 20, 1928, were referred to by the examiner as "of interest," and illustrate certain features of the prior art.

Appellant's tilting tube mercury switch consists of an iron shell, closed at one end, a bolt-like member entering the opposite end, a soft rubber plug surrounding the bolt-like member, and a partial filling of mercury. The outer shell constitutes one circuit terminal, and the bolt-like member the other terminal, and the arrangement is such that the mercury makes and breaks the circuit as the switch is tilted.

Appellant's switch is designed to be evacuated of air and filled with hydrogen gas and then tightly sealed. To permit of this the aperture through the rubber plug

is made slightly larger than the electrode which passes through it, and a washer having radial passages is placed under the nut on the end of the central electrode. In this manner is provided a passage for the gas through the radial passages of the washer and the annular space between the central electrode and the rubber plug, into the interior of the switch. Some of the features above described, and others not herein involved or referred to, are set out by the examiner.

The broad claims at bar, which were rejected on the prior art, call for a combination of the three following old elements, which combination of elements appellant relies upon for patentability of the claims:

(1) Pure iron electrode.

(2) Hydrogen gas occupying the mercury-containing chamber.

(3) Super-atmospheric pressure operating on the hydrogen gas in the chamber.

Claims 13 and 19 were rejected as uninventive over Clark in view of features of Tesla and Phelan.

Clark shows the general arrangement of a mercury switch having an outer metal shell closed at one end and a central electrode at the other end, and with an insulating bushing interposed, all intended to function in the same manner as appellant's device. The outer shell is of "iron or steel" and the switch is sealed tightly.

Phelan discloses electrodes of "substantially pure iron," and an atmosphere of hydrogen at a pressure of substantially one atmosphere, and states that the electrodes are made from pure metals which are "substantially devoid of any impurities" and that the hydrogen "is in a high degree of purity."

Tesla shows the use of gas under high pressure in a mercury switch. The gas, however, is ammonia, and high pressure is used for the purpose of reducing the severity of arcing. His outer casing is of "iron, steel or other proper material." His specification especially emphasizes the high gas pressure feature.

In discussing the Clark reference in connection with the rejection of these claims, the examiner states that Machlett emphasizes the arc extinguishing properties of a gas which is under high pressure.

Claim 17 was rejected as unpatentable over Clark in view of Brown or Stern and in further view of Tesla and Phelan. The examiner stated that the gasket material referred to in the claim could be of the form shown in Clark or could be arranged in connection with a bolt compressor, as in Brown or Stern, without involving invention. The examiner was also of the opinion that there was no limitation in the claim to prevent the structure of the gasket from reading upon Clark and that it would be obvious to seal Clark's chamber airtight. Clark, while showing no filling means, also states that the switch "may be exhausted of air." The examiner then calls attention to the fact that a filling means could be provided by the "filling stem" of Badger.

The appellant and the solicitor for the Patent Office concede that the patentability of the claims depends upon whether or not invention was involved in combining the features which were separately taught in the prior art referred to. It is not denied by any one that all the features involved in appellant's combination claims at bar are to be found in the prior art.

Appellant's specification, and the affidavits which will be hereinafter discussed, emphasize as the important feature of his invention the fact that his device is so constructed that its life is many times the life of the ordinary commercial mercury switch which was on the market at the time he made his invention. The difficulty with the mercury switches used at the time appellant entered the field was that the electrodes became contaminated due to the passing of the electric spark through the gap in the making and breaking of the connection, so that, after about 100,000 makes and breaks, the switch would foul.

Appellant has shown by affidavits that tests were made by highly competent electrical engineers as to the durability of mercury switches other than appellant's. These tests were based upon the number of makes and breaks in the circuit before the switches became so contaminated that they failed to function. It is true that he does not show that switches made in accordance with the Clark and Phelan patents, and filled with inert gas, at superatmospheric pressure, as the board has pointed out, were tested by these parties. The affidavits state very positively that tests were made, that certain well-known switches were given said tests, and one of the affiants addresses himself to a "comparison of the performance of switches other than

those made in accordance with the disclosure of said Armstrong application which have been, and are, commercially available for the uses to which mercury switches are applied," and the affidavits show clearly that such switches will not endure more than 200,000 makes and breaks, and that in the commercial tests which were made of such switches, they were to be regarded as commercially acceptable if they endured 100,000 makes and breaks. It is then shown that on November 10, 1934, after exhaustive tests by James S. Eagen, president and supervising engineer of the Simpson Instrument & Lens Corporation, appellant's switches, which were also then under test, were observed to have made over 59,700,000 makes and breaks, and that at that time they were still "making clean and definite contacts and breaks, not showing any indications of approaching failure, but appear to be capable of indefinite endurance."

The examiner pointed out that this affidavit was not sufficiently definite. Other affidavits were then submitted, including that of said James S. Eagen, who, under date of December 21, 1934, supplemented his former affidavit and stated that the appellant's switches, to which he referred on November 10, 1934, "were being operated to open and close the circuits through 110 volt electric lamps, and that all five of said switches have continued in operation without interruption, and are still operating under 110 volts." Affiant also stated that "they undeniably demonstrated their ability to withstand a current of 5 amperes, opening and closing the circuit at the rate of 680 per minute, and that the endurance of these switches has reached, at the present time, 88,128,000 makes and breaks."

After the affidavits were filed, both Patent Office tribunals considered them, and the examiner stated that he saw no reason presented by the affidavits to justify a change in his decision, and concluded that appellant had an improvement over old results which did not involve invention, except as to the claims which had been allowed. The board, in affirming the decision of the examiner, concluded that the good results claimed by appellant were merely the cumulative and expected result flowing from the several old features embodied in the combination.

Appellant argues in this court that the problem in the art which he solved involved inventing a way of preventing contamination of the electrodes and a fouling of the mercury and that the life of a switch depended upon the number of makes and breaks it experienced before contamination became such as to defeat the passage of the spark; that it was not obvious that the very remarkable, almost phenomenal, result which he obtained by his combination could be obtained from the combination above detailed, and suggests that if nothing more than the skill of the mechanic was required to bring about the desired result, the problem would have been solved long before appellant entered the field. Tesla's patent was issued in 1898, Clark's in 1905, and Phelan's in 1926.

We are inclined to agree with appellant's views that the board erred in holding that upon the record at bar the claims were properly rejected on the ground that the results obtained by appellant's work involved nothing more than mechanical skill. Of course, the mere fact that new and useful results flow from a combination of old art elements does not always mean that invention was required in bringing about such results. They must be such results that they could not be brought about by mechanical skill alone, with the aid of the prior art. It seems to us that appellant's solution of the problem produced such unusual, unexpected, and useful results that it must have involved invention, or at least there is such a doubt on the question as to warrant granting appellant a patent for his broad invention which involved cooperatively combining old elements.

In Ohmer Fare Register Co. v. Ohmer et al. (C.C.A.) 238 F. 182, 190, it was said: "Even if every element of the claims were found in the prior art, invention would still exist if by their combination a new and useful result is obtained, or an old result in a new and materially better way."

Other such broad statements may be found in the decided cases, but of course invention must be involved. For instance, in Independent Oil Well Cementing Co. v. Halliburton et al. (C.C.A.) 54 F.(2d) 900, 906, it is said: "It is sufficient that the elements so co-act or co-operate that as a consequence of their union a new and useful result or an old result in a more facile, economical, or efficient way, and not a mere aggregation of the product of each element, is produced."

It was said in International Mausoleum Co. v. Sievert et al. (C.C.A.) 213 F. 225, 230: "For, even if it shall turn out that each element of the combination was old, yet, if the combination produces a new and useful result, the inventor is entitled to the protection of the patent."

In Buono et al. v. Yankee Maid Dress Corporation, 7 F.Supp. 793, 796, the District Court for the Eastern District of New York, in an opinion by Judge Campbell, said: "The history of the development of this art shows that the patentee of the patents in suit accomplished what others for a long time had sought without success, and this is strong evidence of their patentability."

We quote the following statement from N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co. (C.C.A.) 25 F.(2d) 659, 663: "Although every element of a patent combination is old, invention still exists if the combination either produces a new and useful result, or effects an old result in a new and materially better way."

In a recent case, Wach v. Coe, 64 App. D.C. 235, 77 F.(2d) 113, 115, by the Court of Appeals of the District of Columbia, in an opinion by Mr. Justice Robb, it was said, quoting from Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997: "Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want."

In Re Champeau, 34 F.(2d) 1012, 1013, 17 C.C.P.A.(Patents) 568, this court said: "We are unable to see, after an examination of these references, why the appellant is not entitled to the patent he claims. It is true that the references show that prior to appellant's application the various elements going to make up appellant's device were each well known. It is true also that a somewhat similar result might be obtained, at least by Taepke's patent. But, even though there be nothing novel in the elements combined, if applicant here has, by a combination of known elements, accomplished a new and useful result, he is entitled to his patent."

In Re Merriman, 74 F.(2d) 944, 948, 22 C.C.P.A.(Patents) 923, 930, we said: "It is true that the patent to Tellander taught that hollow articles might be cast in metallic molds having a metallic core so

that their surfaces would be smooth and hard. It may be, now that appellant has solved the problem confronting those engaged in the production of manhole frames and covers, that it seems simple to combine the references of record so as to produce appellant's claimed invention. However, the patent to Tellander was issued in 1881, and the last issued patent of record having any bearing on the subject, the British patent to Needham, was issued in 1923. Accordingly, it seems strange indeed, considering the facts of record, that those skilled in the art should, for many years, resort to the expensive operation of machining in order to secure accurately engaging surfaces of manhole cover seats and covers, if appellant's claimed process and product were obvious to them."

It is argued by the solicitor for the Patent Office that the instant case falls within the rule laid down in Re Hugh Rodman, 53 F.(2d) 895, 896, 19 C.C.P.A. (Patents) 743, where is found the following language: "The reasoning in De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 51 S.Ct. 563, 75 L.Ed. 1339, we think is controlling of the decision in this case. There the Langmuir high-vacuum tube was concededly better than the prior art De Forest audion or vacuum tube, from which it differed by using a higher vacuum, or lower air content, in the tube. The Supreme Court of the United States held that there was no invention in changing the degree of a vacuum, notwithstanding the improved results, because the high vacuum was suggested by other prior art."

In the last above-cited case, the claimed improvement did not consist in combining old elements so that they would coact and co-operate to produce a new and useful result, but consisted in obtaining better results in casehardening steel articles by using a grade of coke better than the prior art taught. This, we said, did not involve invention. So it was in the case of De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 51 S.Ct. 563, 75 L.Ed. 1339. Langmuir obtained better results by using a higher vacuum than that which was taught by the prior art. The Supreme Court of the United States said that there was no invention in changing the degree of vacuum. These two decisions, as we see it, turn upon a principle in no way involved in the case at bar. Here, we are not concerned with a question of the degree of the effect of a single ele-

ment, but with a result of a cooperative combination of elements.

For the reasons stated, we think the claims should be allowed, and the decision of the Board of Appeals is reversed.

Reversed.