182

.PATENT & LICENSING CORPORATION
v. WEAVER–WALL CO.
No. 7322.

Circuit Court of Appeals, Sixth Circuit.
March 11, 1938.

Thomas G. Haight, of Jersey City, N. J., and Harrison F. Lyman, of Boston, Mass. (Samuel Stearman and Fish, Richardson & Neave, all of New York City, and Squires, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for appellant.

George I. Haight, of Chicago, Ill. (John B. Hull and Hull, Brock & West, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and HAMILTON, District Judge.

SIMONS, Circuit Judge.

In a suit by the appellant for infringement of claims 7–15, inclusive, of Cumfer patent, No. 1,604,339, issued October 26, 1926, for "roofing element and roof made thereof," the master, though holding the patent invalid because of abandonment and prior public sale, felt precluded by the presumption attaching to the grant from denying it validity for lack of invention over prior art, though frankly expressing doubt of its presence. The District Judge upon review concluded that in consideration of all prior art no invention was disclosed for which a mechanical or product patent should have been awarded and dismissed the bill.

The patent shows a form of shingle strip roofing made of felt saturated and coated with asphalt and surfaced with finely divided mineral matter, such as granules of slate which may be colored. Shingle strips are usually so formed that when laid in overlapping relationship upon the roof they give the visual effect of individual shingles or tiles. Cumfer's strip consists of a short body portion and two semihexagonal projecting tabs, there being between the tabs a similar semihexagonal cut-out portion. The body of the strip extends at each end beyond the projecting tab for a distance equal to about half the length of the end of the tab. When laid in accordance with Cumfer's directions, the tabs of each successive super-imposed strip are staggered in relation to the tabs of the preceding strip, with their lower edges registering with the edges of the cut-out portions. This provides a series of hexagonal exposures for the composite effect of which many virtues are claimed. They give to the roof, it is said, massivity of appearance, and because the strips may be varied in color they permit of a pleasing variegated color effect to the roof. The appearance of massivity is due to the fact that the base of each tab registering with the base of the cut-out portion between the tabs of the next lower strip presents a double thickness of material to the view, thereby giving an appearance of thickness to the shingles. These double thickness lines are long enough as compared with the single thickness line presented in perspective by the side edges of the tab to dominate the visual effect.

In addition to improved appearance, improved functional results are claimed. Since in forming a roof the strips are nailed thereon one after the other longitudinally across the roof, there is a joint between two such strips through which

water may leak. Cumfer's tabs being of the broad-nose type, cover the joints so as to give maximum protection against such leakage because the distance which water must travel sideways under the tabs to reach the joint is increased. The broad-nose tab, substantially wider at its base than at its lower edge, also tends to reduce the lifting action of wind upon the tabs, and permits the fastening nails to be placed very close to the top of the cut-out portion of the shingle and yet well covered by the overlapping butt of the upper course, thus further preventing leaks. The patented strip, it is said, adapts itself to easy and accurate laying upon the roof, being substantially self-spacing and self-aligning, and, finally, the manner in which its configuration permits it to be cut from the blanks results in great economy of material.

Of the claims in suit, 7, 8, 9, 10, 11, 13, and 14 are for the shingle strip, and 12 and 15 are for a roofing construction thereby achieved. Claim 7 is sufficiently typical of the first group, and claim 12 of the second. Both are printed in the margin.[1]

Neither the master nor the court found complete anticipation of the claims in suit in the disclosures of the prior art, and their conclusions in this respect were undoubtedly sound. There remains, however, the question whether in the light of the teachings of the art Cumfer exercised the inventor's creative faculty. In disposing of it, we think it unnecessary to determine whether the aesthetic results claimed to have been achieved are to be eliminated from consideration because proper subjects for a design patent as provided for by R.S. § 4929, as amended, 35 U.S.C. § 73, 35 U.S.C.A. § 73. The elements of Cumfer's shingle strip and roof structure are basically old. As we have recently pointed out in Ajax Mfg. Co. v. National Machinery Co., 6 Cir., 93 F.2d 344, a combination of old elements, though new, is patentable only when invention may be sensed in the concept of the combination or in the adaptation of old elements to a new environment, for this may be within the skill of those trained in the art.

The simulation of individual shingles or tiles by serrated or tabular extensions of roofing strips laid in predetermined relation to each other upon a roof is old, as shown by prior art references and adjudications, such as Richardson Co. et al. v. Ruberoid Co., 2 Cir., 30 F.2d 232, 234. The pleasing appearance of the regular hexagonal shingle appears in Pierce U. S. patent, No. 121,063, and it is immaterial whether we consider shingle strip roofing as an art differentiated from the art of roofing with single slates or tiles, for it is idle to deny inspiration from the older art when the very objective of the present art is quite frankly to reproduce its visual and functional achievements in a more easily workable and cheaper medium. Schwartz, both in his United States patent No. 1,024,808, and in his Austrian patent, No. 48,497, and Overbury in patent No. 891,501, each discloses double thickness due to the registration of the bottoms of tabs in an upper course with the upper edges of cut-out portions in a lower course of strip material. Certainly no invention can reside in making a strip short rather than long

1 "7. A shingle unit comprising a piece of roofing material formed along its lower edge with a plurality of spaced, semi-hexagonal tabs, the spaces between said tabs being complementary in shape to said tabs, said units adapted to be laid in courses with the ends of the tabs coinciding with the upper edges of the spaces in the next lower course, thereby presenting the appearance of hexagonal shingles, each tab being so proportioned that the horizontal edge thereof predominates in length over the horizontal projection of the sides of said tabs.

"12. In a roofing construction, the combination of a series of overlapping courses of roofing units, each unit comprising a body portion having a tapered tab narrower at its free end and spaced from one end of said body portion and having its end parallel to the front edge of said body portion; each course comprising a plurality of units laid end to end presenting alternating shingle tabs and spaces; said tabs being so spaced that the length of the front edges of said units forming the spaces between adjacent tabs are each equal to the length of the end edge of a shingle tab; said courses being arranged to position the end tab-edges of one course in register with space-edges of the adjacent course, said tabs and spaces of adjacent courses cooperating to present the appearance of a plurality of shingles, the ends of which are of double thickness and the side edges adjacent the end edges of single thickness, said tab being so tapered that the aggregate length of the perspective of the tab side edges when viewed in elevation edgewise of the units are not greater than the length of the end edges of the shingle tab."

to avoid buckling or other disadvantages, and this appellant's expert concedes. The broad-nosed tab is not new, and with similar functional virtue is to be found in Reynolds, No. 1,108,236. Indeed it would seem that Reynolds realized functional advantage in some respects to a greater degree than the narrower tabs of Cumfer.

It is, of course, to be expected that where elements of a combination are all to be found in the prior art, even in somewhat similar environment, it will be urged that a patent is nevertheless valid which covers a device combining them, and where some adaptation was required to fit them into the new combination, under the rule of Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658, and we have said so, Proudfit Co. v. Kalamazoo Co., 6 Cir., 230 F. 120, 127; Nelson Mfg. Co. v. Myers & Bro. Co., 6 Cir., 25 F.2d 659. But the rule always presupposes that the creative faculty is exercised in the combination or the adaptation, for as we have said, "It is elementary that invention may reside in a combination of elements all of which were theretofore separately old in the art, but, in order to sustain such a combination, it is equally clear that the inventor must have done more than make a judicious selection from the devices of the prior art, each designed and utilized to accomplish its individual purpose at a time and in a place where such function is necessary for the operation of the whole. This is but the exercise of the mechanical ability reasonably to be expected in the development of the art." Newcomb, David Co., Inc., v. R. C. Mahon Co., 6 Cir., 59 F.2d 899, 901.

Richardson Co. v. Ruberoid Co., supra, rightly understood, furnishes little support to the appellant. It is true that invention was there found to reside in Heppes patent, No. 1,243,064, issued October 16, 1917, for a roofing strip cut to ornamental design so as to imitate the ends of shingles when laid in place. But there the infringer sought to avoid the patent by merely blunting the teeth of the pointed shingles of the disclosure. "Strictly, the defendant has no exposed points; they have been substantially truncated, and the material cut off left in the valleys of the adjacent strip. Yet the change is scarcely more than one of taste; it could not, for example, be even plausibly argued that an infringer should escape because he had merely blunted the teeth or somewhat rounded them off." It would seem, therefore, under familiar rules, that the snub-nosed tabs of Cumfer demonstrate no patentable advance over the narrow-nosed tabs of Schwartz if the truncated serrations of the infringer in the cited case might not avoid the sharper "apices" of Heppes.

We come then, as it seems we inevitably must in most cases, to the contention that the commercial success of Cumfer demonstrates invention in the patent. Here it is said to lie in the acceptance of licenses under the patent by seventeen large manufacturers of asphalt shingle strips. Were there doubt of invention in the claims in suit this might raise an inference of validity, though there is suggestion in the evidence that the merit of the invention was not the principal inducement to the taking of licenses. Whether so or not we have no occasion to decide, for absence of invention seems clear.

The decree below is affirmed.