### AMERICAN STEEL & WIRE CO. OF NEW JERSEY v. COE, Com'r of Patents.
### No. 7161.

United States Court of Appeals for the District of Columbia.

Decided March 27, 1939.

Rehearing Denied June 26, 1939.

18

E. W. Shepard, of Washington, D. C., and John E. Jackson, of Pittsburgh, Pa., for appellant.

R. F. Whitehead, Solicitor, U. S. Patent Office, for appellee.

Before STEPHENS, MILLER, and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant, plaintiff below, is the assignee of James Forrest Howe, applicant for a patent upon a process for the manufacture or construction of large size suspension cables used in bridges and similar structures. Three claims were relied upon in the lower court.[1] The lower court dismissed the bill, holding that "the method here described sufficiently appears from the prior art * * * [and does] not rise to the dignity of invention."

The Patent Office relied upon three references[2] to show the prior art. The

---

[1] Claim 10, which is typical, reads as follows: "The method of making suspension bridge cables which consists in forming a series of wires into spirally wound strands of the required length and diameter and stretching, conditioning, measuring and attaching end fastenings to the so formed strands in the mill, then assembling a series of the so formed strands in lengthwise parallel relation at the bridge site, and fastening the assembled strands together in completing the cable."

[2] Greer, No. 411,499, September 24, 1889; Rieppel, No. 625,902, May 30, 1899; Engineering Record, November 2, 1912, p. 489.

lower court relied upon an additional one, i. e., the patent to Howe, No. 1,427,471, August 29, 1922. Appellant now contends that this patent was not relied upon in appellee's answer in the lower court, hence that it was not properly before the court for its consideration. This is a remarkable contention, in view of the fact that it was appellant which, as plaintiff in the lower court, introduced the Howe patent of 1922, and designated it for inclusion in the transcript of record. But, in any event, it was properly received in evidence and properly considered. The proceeding under Section 4915, R.S., 35 U.S.C.A. § 63, is a proceeding de novo in equity and, while the inquiry therein must be confined to the invention claimed in the Patent Office,[3] nevertheless, "It is not a technical appeal from the Patent Office, like that authorized in § 4911 [35 U.S.C.A. § 59a], confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced and upon the whole merits."[4]

█ The process for which invention is claimed consists of five steps, the first four in the factory and the fifth at the bridge site, as follows: (1) Several individual steel wires are twisted together into a strand; (2) this strand is then stretched and conditioned to remove the slack; (3) the strand is then measured for length; (4) the ends of the strand are fastened to prevent untwisting and slackening. When these strands have been so prepared they are (5) taken to the bridge site and there laid parallel and fastened together in sufficient number to form a cable of the desired diameter.

It was conceded on oral argument that there is nothing new in the use of steel wires in strands; in the use of strands themselves; in the use of hydraulic pressure to stretch and condition wire; in the measuring of strands; in the end-fasteners used or in the end-fastening operation itself; or in the laying of strands parallel and fastening them together into cables at the bridge site. It is contended, however, that the use of all these steps, in combination and in sequence, constitutes a new process, which makes for convenience and a great reduction in expense over the practice of assembling the individual steel wires into cables at the bridge site.

In our opinion there was no invention. The method described consists merely of a rearrangement or new combination of old mechanical operations. The fact that the new combination accomplishes a better result is not enough to evidence invention,[5] because it required no more than the exercise of ordinary mechanical skill for its accomplishment.[6]

The result sought by the applicant was a suspension bridge cable, anchored in place, from which the slack had been removed so that when the weight of the bridge was placed thereon, the cable would not stretch. Although in argument, the "preconditioning" steps were emphasized, examination of the claims will show that it is the whole method of "making suspension bridge cables" which is claimed, and each step is specified therein from

---

[3] Lucke v. Coe, 63 App.D.C. 61, 64, 69 F.2d 379, 382.

[4] Butterworth v. United States ex rel. Hoe, 112 U.S. 50, 61, 5 S.Ct. 25, 31, 28 L.Ed. 656. See also, Curtiss Aeroplane & Motor Corp. v. Janin, 2 Cir., 278 F. 454, 455; General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 96 F.2d 800, 812. Cf. Barrett Co. v. Koppers Co., 3 Cir., 22 F.2d 395.

[5] Buchanan v. Wyeth Hardware & Mfg. Co., 8 Cir., 47 F.2d 704, 707; Western Willite Co. v. Trinidad Asphalt Mfg. Co., 8 Cir., 16 F.2d 446, 450, certiorari denied, 274 U.S. 737, 47 S.Ct. 575, 71 L.Ed. 1317.

[6] Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69, 79, 54 S. Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005; Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438; Pearce v. Mulford, 102 U.S. 112, 117, 118, 26 L.Ed. 93; Patent & Licensing Corp. v. Weaver-Wall Co., 6 Cir., 95 F.2d 182, 183; Minnesota Mining and Mfg. Co. v. Coe, 69 App.D.C. 217, 99 F.2d 986; L. Sonneborn Sons, Inc. v. Coe, 70 App.D.C. 97, 104 F.2d 230; Thomson Spot Welder Co. v. Ford Motor Co., 6 Cir., 281 F. 680, 684, affirmed, 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098: "In other words, given the desire for a welding in spots, naturally enough suggested by the prior art and by its commercial development, we think Harmatta's specific application of the principles of that prior art involved only the skill of the expert mechanic. Not only every principle, but every electric and mechanical process, involved in the Harmatta claims, was well known in the prior or directly analogous arts, or in mechanical arts generally." Cf. In re Armstrong, Cust. & Pat.App., 83 F.2d 924, 926.

(1) forming wires into strands to fastening the assembled strands together and completing the cable. The result above stated has been long achieved by the parallel placement of individual *wires*. Moreover, the parallel placement of *strands* in the making of suspension cables is at least foreshadowed in the Greer patent, No. 411,499, September 24, 1889,[7] and in the article in Engineering Record, November 2, 1912, p. 489.[8]

Moreover, it should be noted that there *is no evidence to show that the stretching or sagging, which the applicant proposed to prevent, had ever occurred in cables constructed either by the method of laying individual wires or by the method of laying strands as revealed in the Greer patent and in the Engineering Record.* Appellant clearly states in its brief: "The present invention resulted from the failure and impracticability of cables composed of individual units such as ropes." The significance of this statement appears when it is realized that the attempt to make cables with rope units was the idea of Howe—the original applicant in the present case—expressed in his 1922 patent, No. 1,427,471. In other words, Howe, in 1922, attempted to devise a more economical method of making suspension cables by prefabricating (5) rope units in the factory. The problem of stretching apparently was unknown at that time, because he does not mention it in his 1922 patent. When he attempted to put his patent into operation he discovered that cables made with prefabricated steel ropes stretched when the bridge load was imposed. It was to avoid a defect in his own new method of 1922, then, that he proposed the method of the present application. But the fact that his own intervening proposed method developed a fatal defect cannot hide the fact that the present application proposes nothing more than a simple combination of well known mechanical operations.

What appellant seeks, therefore, is a patent upon a method or process which consists of a series of old, familiar mechanical operations, most of which had been long used in combination in cable making. The theory of its claim is that the applicant improved one part of the process, i. e., by preconditioning strands. But this one improvement alone is not more than a mere exercise of mechanical skill and its addition to the process would, therefore, not permit appellant to claim as an invention the whole combination of elements thus involved.[9]

Affirmed.

---

[7] "2. In a suspension-bridge, a cable composed of parallel strands suitably bound together and provided with opposite sleeves, from which the strands diverge, . . ."

[8] "The galvanized seven-strand cables 4½ in. in diameter are neither wound nor jacketed, . . . Each end of each cable strand is socketed and receives a short 2¼-in. diameter U-bolt. . . . The strands diverge from a heavy collar clamped to the cable just beyond the river face of the anchorage."

[9] Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 550, 58 S.Ct. 662, 664, 82 L.Ed. 1008: "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination.", and see cases there cited; In re Germantown Trust Co., Cust. & Pat.App., 57 F.2d 365, 366: "A combination, to be patentable as such, must disclose a novelty of co-operation between its elements which produces a new result and amounts to invention, and the mere fact that some elements are themselves novel and possibly patentable as individual elements does not render the combination containing them patentable in the absence of such novel co-operative relation in the combination itself."; In re Reed, Cust. & Pat.App., 76 F.2d 907, 909, 910.