George F. **STRADAR** et al., Appellants,

v.

**Robert C. WATSON,** Commissioner of Patents, Appellee.

**No. 13517.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 11, 1957.

Decided May 13, 1957.

Mr. Lawrence B. Dodds, Little Neck, N. Y., with whom Mr. Miles D. Pillars, Washington, D. C., was on the brief, for appellants.

Mr. S. William Cochran, Atty., United States Patent Office, with whom Mr. Clarence W. Moore, Sol., United States Patent Office, was on the brief, for appellee.

Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

George F. Stradar applied for a patent on an invention entitled "Image-Engraving Plate and Process of Producing the Same." The application, Serial No. 203,310, contained 13 claims relating to a blank plastic plate or sheet to be photoelectrically engraved and used to reproduce images in printed matter, a fourteenth relating to a process of producing the blank plastic plate, and a fifteenth relating to a process of not only producing but also engraving the blank plastic plate. After filing his application, Stradar assigned all his right, title and interest therein to his employer, Fairchild Camera and Instrument Corporation.

Prior to Stradar's development of the plate upon which the claims are based, Fairchild had marketed a photoelectric engraving machine, described in Boyajean Patent Re. 23,914, for producing plastic half-tone engraved plates to substitute for the more expensive zinc or copper variety, and had furnished to the trade plates of clear cellulose-nitrate plastic for use in the engraving machines. While these plates made good pictures, they were not entirely satisfactory. Printers were accustomed to colored plates on which they could fairly well observe the picture to be reproduced. The images on the Fairchild clear plastic plates were not distinct enough for the printer easily to see when he had the picture right-side-up; or readily to discern defects in the plates due to improper operation of the engraving machine; or properly to adjust the

machine during the engraving process. Thus the clear plastic plate, despite its advantages, met with somewhat limited acceptance simply because of its lack of color.

Fairchild gave Stradar the task of finding a solution to the difficulties experienced by printers in using the clear plastic plate. The ultimate answer was obvious: to tint the plate so the image engraved thereon would be more easily visible to the user. But the steps leading to the answer were neither obvious nor easy. Stradar's problem was to add color to a finished surface of the plate to a depth so slight that the engraving stylus would cut through and beneath it, thus revealing the image outlined in the clear portion of the plastic against the contrast of the uncut tinted surface; and to combine with the dye a solvent, mutual to it and the plastic plate, of such a nature and in such proportions that the tinted surface would retain the original physical characteristics which made it suitable for engraving and subsequent use in printing.

After extensive experimentation Stradar produced a colored plastic engraving plate which cured the shortcomings of the clear plate. He tinted one surface of the transparent plate to a depth of the order of 1/10,000 of an inch—less than the penetration of the heated engraving stylus—and did so with a mixture of 95 per cent methyl alcohol and an aniline dye, which did not soften, mar or otherwise affect the plate's surface but left it with its original physical characteristics. This tinted plate at once became a conspicuous commercial success.

The Patent Office Examiner rejected all of Stradar's claims as unpatentable over Ford, No. 2,314,975, which describes a process for producing a non-transparent milky-white or frostlike coating on a transparent plastic plate for decorative purposes. The claims were amended to point out distinguishing differences, but were again rejected as unpatentable over Ford. Upon the filing of additional affidavits, the Examiner abandoned his reliance on Ford, but this time based his rejection of all claims on the Hickman patents: No. 1,900,877, relating to non-halation motion picture film, and No. 1,957,888, relating to a process of dyeing or treating photographic film and to the product so produced. The Examiner said:

"* * * All the actual structure recited in claims 1 to 13 and the process steps of claims 14 and 15 are thought to be present in each of the Hickman patents. As far as the recited plate per se and method of making it are concerned, it is thought to be patentably immaterial that applicant intends to put it to a specific use. In other words, *there is nothing in the structure of the plate recited to make it peculiarly adapted to the engraving arts rather than the photographic uses of the references.* Therefore, applicant's arguments that the references are from a non-analogous art are not persuasive. The commercial success alleged has been considered but fails to convince the examiner that the claims avoid the references. * * *" (Emphasis supplied[1].)

Stradar and Fairchild appealed to the Board of Appeals of the Patent Office which affirmed the Examiner's decision with reference to claims 1 through 14 but reversed as to claim 15, which is as follows:

[1]. The statement quoted above, the gist of which we have italicized, is plainly incorrect. The basic clear plate which is thick enough to be engraved and rigid enough to be utilized by the printer, with bent edges to engage in the engraving machine, is obviously peculiarly adapted to the engraving art rather than to the art of manufacturing motion picture film —too flimsy to be engraved—described in the references. The structural difference between the tinted plate and the tinted film was further emphasized in evidence at the judicial hearing which was not before the Examiner.

"The process of producing an engraved plate for reproducing images by printing processes which comprises applying a heated engraving stylus, in a predetermined pattern, to a finished-surface sheet of deformable thermoplastic material, only the engraving side thereof having a surface portion treated to a depth less than the maximum deformation encountered in engraving with a mixture of a dye and a co-solvent for the thermoplastic material and the dye, said treated surface material retaining substantially the original character of the finished surface."

With respect to claim 15 the Board of Appeals held that

"* * * [I]n view of the significant and unobvious results that the appellant obtains by substituting the tinted plate recited in this claim for the clear plate which has been previously used in this process, and the outstanding commercial success of the claimed process, this substitution renders the claimed process patentable. * * *"

Thereupon Stradar and Fairchild filed this suit under 35 U.S.C. § 145, asking the United States District Court for the District of Columbia to authorize the Commissioner of Patents to issue a patent covering the 14 claims which had been rejected. After an evidentiary hearing, the District Court dismissed the complaint. Stradar and Fairchild appeal.

The memorandum opinion of the trial judge shows his ruling was based largely on the presumption that the decision of the expert Patent Office is correct. We quote from his opinion:

"The issues raised in this case are within the special competence of the officers of the Patent Office, and the case is therefore controlled by the presumption in favor of the determination by the Patent Office.

\* \* \* \* \* \*

"* * * Since the evidence reveals a reasonable basis for the determination of the Patent Office, judgment must be awarded for defendant."

█ It should be noted, however, that at the hearing in the District Court the appellants introduced material evidence tending to show patentability over the Hickman references. This proof, which will be noticed later in this opinion, was not contradicted and contained information which was not presented to the Patent Office.[2] That being true, the District Court was not controlled by the presumption of correctness which attaches to Patent Office action, but was free to reach its own conclusion on the basis of the fuller information which was before it.

Moreover, although the memorandum opinion rested decision on the expertise of the Patent Office, the District Court made findings of fact upon which it formally based its conclusion that the appellants are not entitled to a patent containing any of the 14 claims in question. The conclusion was essentially grounded on these findings:

"3. The Hickman patents No. 1,900,877 and No. 1,957,888 show that it is old to impregnate one side of plastic photographic film base with a dye by applying to the base a solution of the dye in a solvent which is also a partial solvent for the base. In Hickman patent No. 1,900,877 the dye solution is disclosed as 2½ parts of a suitable dye in 1000 parts of a solvent consisting of equal parts methyl alcohol and acetone.

"4. Aside from the reference in the preamble of each claim to an 'engraving plate for reproducing images by printing processes,' claims

2. The brief of the Commissioner of Patents refers to the fact that "the applicant in presenting his case to the Patent Office made no contention that either

the nature of the solvent or the depth of penetration were critically different from Hickman's." This may account for the action of the Patent Office.

1 to 4, 8, 9, 12 and 13 describe the tinted product disclosed by the Hickman patents and those claims are, therefore, effectively anticipated in a structural sense.

"5. The evidence failed to establish any difference critical to an improved result in the use of a solvent consisting of 95% methyl alcohol instead of the solvent disclosed in the Hickman patent No. 1,900,877, and claims 5, 6, and 7, therefore, define nothing inventive over the Hickman patents.

"6. Claims 10, 11 and 14 are indefinite in their reference to the depth of penetration of the dye in the base material and, therefore, define nothing inventive over the Hickman patents."

Since the trial court's conclusion depends for validity upon the correctness of these findings, it is necessary to determine whether the evidence supports them. We digress, however, for a brief description of the nature of the two Hickman patents which are said to have anticipated Stradar's claims, with some reference to the evidence which distinguished the former from the latter. In Hickman No. 1,900,877 the inventor dealt with a problem called "halation," which is in photographic parlance a spreading of light beyond its proper boundaries. He pointed out that modern emulsions used in manufacturing motion picture film are highly sensitive to the yellow-green and red portions of the spectrum; that the light from the powerful incandescent blubs used is particularly rich in such rays; and that, when unbacked film is used, halation is due almost entirely to rays of these colors.

To avoid this, Hickman incorporates on either side of, or in the substance of, the film support a blue dye which will absorb light more or less uniformly throughout the entire visible spectrum with the exception of a region in the extreme blue. This is done during manufacture by applying a dye and solvent mixture which will penetrate the support far enough to embody the dye permanently in its surface so it will not be removed in the ordinary photographic processes. The blue-backed film is then treated with a layer of emulsion. Thus the finished non-halation film is in three layers: (a) the film base or support, (b) the halation barrier of dye to absorb certain light rays, and (c) the photographic emulsion.

In the patent just discussed Hickman was not concerned with limiting the depth of dye penetration. He did not mind if the color permeated the entire film support. But the evidence shows that to Stradar it is of critical importance to hold the penetration to an infinitesimal maximum so the engraving tool will go through to the clear portion of the plastic beneath the color. It further appears from the proof that Hickman's solvent mixture would damage the engraving plate and impair its usefulness. Stradar prescribed a solvent mixture which does not disturb the physical characteristics of the engraving surface.

Hickman's second patent, No. 1,957,888, relates to a process of dyeing or treating photographic film and to the product so produced, the process being in three steps: hydrolysis, mordanting and dyeing. In the first step, the surface layer of the film base is partially changed chemically and more or less microscopically roughened. In the second, a substance is formed in the hydrolyzed layer which is capable of fixing or mordanting the dye. The third step is dyeing the film. No mention is made of the depth of dye penetration which is of prime importance in the Stradar process. The proof was that the chemical change in and roughening of the film surface, immaterial to Hickman, would adversely affect if not destroy the usefulness of Stradar's tinted plate.

Having identified the Hickman references in preceding paragraphs, we turn to consider Stradar's claims in relation to them. For convenience in discussion we quote from the appellee's brief the

following helpful classification of the 14 claims which are involved here:

"The claims appear to fall into three groups: (1) a first group employing broad terminology in which no mention is made of the depth of penetration of the dye into the plastic or of any dye or solvent not shown to be old by the Hickman patents (claims 1 to 4, 8, 9, 12 and 13); (2) a group of claims which differ from the first group in limiting the solvent used to 'approximately 95% methyl alcohol' (claims 5, 6 and 7); and (3) a third group which differ from the first group by language referring to the depth of penetration of the dye in the base [claims 10, 11 and 14]."

With reference to the first group the trial court found, in finding No. 4, that "Aside from the reference in the preamble of each claim to an 'engraving plate for reproducing images by printing processes,'" the eight claims of the group describe the tinted product disclosed by the Hickman patents and are therefore effectively anticipated in a structural sense. To support this finding the appellee cites In re Laurent, 1951, 186 F.2d 741, 743, 38 C.C.P.A., Patents, 811, where the court said that a preamble or introductory clause "which merely states a purpose independently of the structure otherwise completely defined by the claim, does not constitute an additional limitation of the subject matter defined by the claim." There is a well established exception to this generality. In Schram Glass Mfg. Co. v. Homer Brooke Glass Co., 7 Cir., 1918, 249 F. 228, 232–233, certiorari denied 247 U.S. 520, 38 S.Ct. 582, 62 L.Ed. 1246 the court said: "Such a clause of itself may entirely fail to supply a necessary element in a combination * * * yet it may so affect the enumerated elements as to give life and meaning and vitality to them, as they appear in the combination." Other cases to the same effect quote the Seventh Circuit's picturesque expression.

The exception is applicable here. It is observed that each of the claims in the first group contains not only the preamble but also this concluding language: " * * * said treated surface material retaining substantially the original character of the finished surface." This means, as the evidence shows, that the mixture of the dye and a solvent mutual to the plastic and the dye is critical in character, in that the dye and solvent mixture must not cause chemical reaction and must not soften or otherwise affect the original physical characteristics of the finished surface. Such a requirement is wholly absent from the Hickman patents, which prescribe a solvent of acetone and methyl alcohol shown by the evidence to be not only unsatisfactory but actually harmful if used in Stradar's process. The structure of the plate produced by his process and described in the eight claims of the first group is, therefore, different from that of Hickman's film which has undergone a chemical reaction and a consequent change in physical characteristics.

We have noted that a process patent was issued on claim 15, due to the finding by the Board of Appeals of the Patent Office that Stradar had obtained significant and unobvious results and outstanding commercial success by substituting the tinted plastic plate for the clear plastic plate previously used. It is equally true that Stradar's process produced a useful engraving plate of a kind which had not been known before. When, as in this case, a patented process produces a new and useful product unlike any other, the inventor is entitled to a patent on the structure as well as on the process. Unlike Hickman's film, Stradar's semi-rigid plastic plate is thick enough to be engraved and to be suitable for its subsequent intended use, and has been tinted by a dye solution the composition of which is critical. Such a product limited to the purpose prescribed in the preamble of each claim is a significant and unobvious result as to structure. On these considerations, we hold the District Court's finding of fact

No. 4, which is in part a conclusion of law, is clearly erroneous in refusing to give effect to the preamble of the eight claims in the first group, and in holding they were anticipated in a structural sense by the tinted film disclosed by the Hickman patents.

We turn to the second group composed of claims 5, 6 and 7, which differ from the first group in limiting the solvent to "approximately 95% methyl alcohol." With respect to these claims the District Court found as a fact in finding No. 5 that the evidence failed to establish any difference critical to an improved result in the use of Stradar's solvent instead of that disclosed by the first Hickman patent. The evidence is to the contrary and shows without contradiction, as we have noted above, that the use of Hickman's solvent of acetone and methyl alcohol would injure Stradar's plate and make it unsatisfactory for use. The rejection of claims 5, 6 and 7 on the basis of finding of fact No. 5 was therefore clearly erroneous.

The third group, claims 10, 11 and 14, refer to the depth of dye penetration as being critical. Claim 10 describes a "depth less than the maximum deformation by engraving." Claim 11 refers to a "depth of the order of 0.0001 inch." Claim 14 prescribes a depth "less than the maximum deformation encountered in engraving." The District Court found in finding of fact No. 6 that "Claims 10, 11 and 14 are indefinite in their reference to the depth of penetration of the dye in the base material and, therefore, define nothing inventive over the Hickman patents." Hickman was not concerned with limiting the depth of the dye penetration, as we have seen. But with Stradar the depth to which the dye penetrated was most critical, for reasons already noted.

It seems obvious that the depths of penetration in claims 10 and 14—less than the maximum deformation by engraving—must be related to and equated with the "depth of the order of 0.0001 inch" specified in claim 11. The finding

that a reference to a depth of penetration of the order of, i. e. about or approximately, one ten-thousandth of an inch is indefinite cannot be accepted as realistic. It would be difficult to be more precise. The three claims were sufficiently definite as to the depth of the dye penetration to prevail over the Hickman patents.

 We think the record shows that Hickman and Stradar, working in different fields, solved different problems by developing different processes which produced products of different structure designed for different uses. It follows that Hickman's processes and products, though earlier, did not anticipate Stradar's. The District Court's dismissal of the complaint will be set aside, and the cause will be remanded for the entry of a judgment authorizing the Commission of Patents to issue a patent embodying the 14 claims which were formerly rejected.

So ordered.

FAHY, Circuit Judge, dissents.