49 CCPA
**Application of Douglas H. MORETON.**
**Patent Appeal No. 6718.**

United States Court of Customs and Patent Appeals.

Nov. 17, 1961.

Francis C. Browne, Washington, D. C. (William E. Schuyler, Jr., Andrew B. Beveridge, Joseph A. DeGrandi, Washington, D. C., Gerald H. Peterson, Santa Monica, Cal., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office. Board of Appeals affirming the rejection of claim 20, the only claim remaining in the application of Douglas H. Moreton, Ser. No. 369,055, filed July 20, 1953 for "Back Up Washer and Sealing Device."

Appellant's specification describes the invention generally as follows:

"This invention relates to sealing or packing arrangements and more particularly to a helical back up washer either alone or in combination with standard type sealing or packing rings in order to greatly increase the efficiency and longevity of the sealing arrangement.

\* \* \* \* \* \*

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

"The present invention, resulting from extensive development and testing, represents a completely satisfactory solution to many of the problems and weaknesses inherent in presently known types of back up washers. This result is achieved by the use of a polytetrafluoroethylene plastic polymer ["Teflon"] admixed with molybdenum disulfide having high surface lubricity in combination with other satisfactory properties which is machined or otherwise formed into a helical configuration comprising more than one coil. * * This plastic material is flexible yet hard and has a low coefficient of friction on itself and most other surfaces, which aids greatly in preventing fluid leakage while keeping friction to a minimum."

The claim on appeal, broken up into its elements with inserted reference characters to facilitate discussion, reads:

"20. [A] In a sealing means for preventing phosphate ester fluid leakage between relatively moving elements of an hydraulic system having

"[a] an 'O' ring mounted in relatively stationary relationship to one of said elements and with respect to which another of said elements moves, and

"[b] a back-up washer reinforcing said 'O' ring,

"[B] the improvement which comprises a combination in which

"[c] the 'O' ring is composed of butyl rubber and

"[d] the back-up washer is composed of polytetrafluoroethylene plastic material containing from about 5% to about 30% by weight of molybdenum disulfide,

"[e] and is inert to the organic hydraulic fluid, is flexible and highly wear resistant, has a high yield point over a wide temperature range and has high surface lubricity,

"[f] whereby damage to the 'O' ring normally resulting from wear caused by sharp changes in movement and pressure applied thereto is substantially reduced."

The sole issue is patentability over the following references:

| | | | |
|---|---|---|---|
| Waring | 2,494,598 | Jan. | 17, 1950 |
| Cousins | 2,597,976 | May | 27, 1952 |
| Rubin | 2,644,804 | July | 7, 1953 |
| Jelinek | 2,717,024 | Sept. | 6, 1955 |

"Synthetic Rubber O-Ring Seals," by E. L. Carlotta, in Product Engineering, June, 1951, Pages 130 through 135.

"Roylon Spiral Back-up Rings," Folder R–193 of Roylyn, Incorporated, 1706 Standard Ave., Glendale 1, California, August, 1952.

*Waring* discloses an oil-proof rubber O-ring (of "neoprene" or "Buna S," the latter also known as "GRS") and a "Teflon" back-up washer used as a sealing means in combination with a piston and a hydraulic cylinder encircling the piston. "Teflon" (polytetrafluoroethylene) is described as "a material of extreme toughness which is also fairly soft, flexible and non-porous." The function of the Waring back-up washer is to prevent the rubber O-ring from flowing under high pressure into the clearance space between the piston and the cylinder.

*Cousins* discloses covering annular gaskets of natural or synthetic "rubber-like material" with, among other things, "Teflon" or "Kel-F" (polytrifluorochloroethylene) to produce a composite product which will resist swelling, solvent action, plastic flow under pressure, retain its flexibility, and will seal bearing surfaces against leakage of liquids.

*Rubin* discloses packing compositions composed in part of "Kel-F" polymers and either graphite or molybdenum sulfide [1] each of which is described as "a

1. The board stated that "the 'molybdenum sulfide,' mentioned in the Rubin patent, and appellant's 'molybdenum disulfide' are the same composition, these two terms

suitable anti-friction agent." The exact composition of various ones of the Rubin packings and their functional characteristics will be discussed later.

*Jelinek* discloses gaskets and O-rings capable of functioning at high speeds and composed of a core, which may be of various materials including "Teflon," over which is a protective layer of "Kel-F."

*Carlotta* discloses dynamic seal applications wherein the O-ring can be made from butyl rubber and the back-up washer from "Teflon, Kel-F or other suitable material." Butyl rubber is stated as having "excellent resistance to vegetable oils, lard, and dilute organic acids and alkalies."

*Roylon* discloses helical or spiral "Teflon" back-up washers which may be used with O-rings.

The issue of patentability is somewhat beclouded by the failure of appellant to demarcate clearly that which was old in the art from that which is alleged to be novel.

Appellant states in his specification that the broad combination of "an elastically deformable, pressurally extrudable packing or 'O' ring" and a back-up washer to prevent the "pressural extrusion of the softer packing ring into the space between the two mating members" is old. The Waring, Roylon and Carlotta references disclose this to be so. Roylon and Carlotta also disclose, respectively, the exact "Teflon" back-up washer configuration and O-ring claimed by appellant.

For the reasons hereinafter stated we feel that appellant's claimed combination of a known "Teflon" back-up washer with a known butyl rubber O-ring with the addition of molybdenum disulfide to the "Teflon" as a lubricant would have been obvious to one having ordinary skill in the art at the time the invention was made.

Appellant's specification states that a helical back-up washer is desirable be-

cause damage "to the adjacent packing ring is avoided since no split is present to chew at the ring as the washer 'works' or expands and contracts under pressure." It is also stated that this washer configuration "permits the washer to alter its diameter as it is worked under pressure even though no 'split' is present." Such statements, however, are but recitations of the inherently desirable characteristics present in a helical Roylon washer in combination with any rubber O-ring. We note, moreover, that the claim refers merely to a "flexible" back-up washer (clause [e]) so the helical form of washer is irrelevant on the issue here.

Appellant's specification further states that the *back-up washer* of his invention

" * * * works surprisingly well with a butyl rubber 'O' ring which, with ordinary back up rings [i. e., washers], has an unusually high tendency to wear, due to the fact that butyl rubber has great elasticity and therefore extrudes readily but has a slow recoil or slow rate of recovery after extension, so that it *requires a firmer back up ring* [washer] under all conditions of use in the hydraulic system *to prevent damage to the 'O' ring* resulting from wear caused by sharp changes in direction of the pressure of the hydraulic fluid or direction of movement of the piston head." [Emphasis ours.]

It appears, therefore, that it was because of certain inherent disadvantages in the behavior of *butyl* rubber O-rings that they have been claimed specifically, in combination with "Teflon" back-up washers. Appellant does not profess to have discovered these disadvantages. Carlotta clearly teaches the desirability, if not the necessity, of using back-up rings, including "Teflon" rings, where such disadvantages must be overcome. The use of a butyl rubber O-ring with the claimed hydraulic fluid in combina-

being but different names therefor." The appellant has not controverted this statement. Though this assumption does not appear to be technically correct, we accept it for the purposes of this decision.

tion with a "Teflon" back-up washer is clearly taught by the prior art.

A back-up washer composed of "Teflon" and $MoS_2$ appears to be novel. The alleged advantages associated with the use of such a washer are set forth in clauses [e] and [f] of the claim. We feel, however, that these advantages would all be present, to a considerable degree, in a back-up washer of "Teflon" alone.

For example, in clause [e] the back-up washer is recited to be "inert to the organic hydraulic fluid." Appellant's specification states that "Teflon" has been "boiled in many solvents, including a variety of halogenated hydrocarbons, ketones, esters, and alcohols, without swelling or any other sign of attack." Roylon, however, shows that this chemical resistance of "Teflon," was not a discovery of appellant. This reference says spiral "Teflon" back-up washers are chemically inert, unaffected by oils or solvents, will not harden, soften, swell or shrink, have a higher operating temperature range, and have low friction as compared with common types of rings. These attributes, Roylon states, add "to the long life and resulting economy of these rings."

Appellant's stated reason for adding $MoS_2$ to his back-up washer is that "polymers of tetrafluoroethylene with $MoS_2$, act as solid lubricants." Such polymers, however, are disclosed by Roylon to have desirable "low friction" characteristics *even in the absence of* $MoS_2$. Roylon says this is "an outstanding characteristic" of its washers. In view of these considerations, it may be inferred that in composing a back-up washer of "Teflon" and $MoS_2$ appellant merely intended to enhance the already existing desirable anti-friction properties of "Teflon" back-up washers.

 No proof has been offered by appellant that the particular $MoS_2$ range recited in clause [d] of the claim is critical. Accordingly, we have not treated it as such and have not considered this range recitation significant on the issue

of patentability. In re Swenson et al., 132 F.2d 1020, 30 CCPA 809.

The question of patentability in the instant case must, accordingly, be decided by determining the obviousness of forming a back-up washer of "Teflon" and $MoS_2$.

Rubin is the sole reference disclosing use of molybdenum sulfide as an anti-friction agent. Rubin states:

"The packing composition of this invention comprises a polymer of trifluorochloroethylene ["Kel-F"] in admixture with * * * *solid anti-friction agents, such as* graphite and *molybdenum sulfide* * * * *The solid anti-friction agent* is employed in the form of flakes or granules or small pieces." [Emphasis ours.]

Appellant attacks the sufficiency of the Rubin disclosure on the ground that Rubin discloses molybdenum sulfide used with an "entirely different" thermoplastic. We find this argument unpersuasive.

The Rubin disclosure includes four examples of packing composition according to his invention. Example 1 is 36% by weight of graphite particles in various specified sizes and proportions as an anti-friction agent, 36% by weight of a thermoplastic "Kel-F" polymer, 14% by weight of a waxy "Kel-F" polymer, and about 14% by weight of asbestos. Molded "rings" made from this composition are characterized as:

" * * * suitable for pump shaft and valve stem packings from very low speed applications to the highest speeds normally encountered."

The compositions of examples 2 and 4 are similarly composed of graphite particles of specified sizes in specified percentages by weight, and various "Kel-F" polymers in stated proportions. These compositions, however, are characterized as "suitable for static seals." No apparent reason exists for their non-suitability for dynamic applications. Obviously, many variables exist in these compositions, making it difficult to say from the Rubin

disclosure exactly which combination of constituents would make a particular composition suitable for dynamic applications. The most apparent differences between the compositions in examples 1, 2, and 4 are that (1) no asbestos is used in the compositions of examples 2 and 4 and (2) the compositions of examples 2 and 4 include in place of the waxy "Kel-F" polymer of example 1, a heavy oil "Kel-F" polymer.

Example 3 discloses a composition which also lacks asbestos and includes a heavy oil "Kel-F" polymer. In place of graphite, however, $MoS_2$ is used. This composition, like the compositions of examples 2 and 4, is stated to be suitable only for static applications. Referring to this part of the Rubin disclosure, appellant states:

"* * * if the Kel-F [containing $MoS_2$] cannot be used in moving shaft applications because of excessive heat build up, *the Teflon containing the same molybdenum sulphide will likewise be expected to be detrimental for the same purposes.*" [Emphasis appellant's.]

The weakness of this argument lies in its inherent assumption that $MoS_2$ caused this composition to be unsuitable in moving shaft applications. However, the lack of asbestos or presence of the heavy oil "Kel-F" polymer, among other variables, could more reasonably be said to deprive this composition of suitability in dynamic seals.

When the entire Rubin disclosure is read, it is clear that Rubin did not exclude molybdenum sulfide from all moving shaft applications involving his "Kel-F" polymers. To hold otherwise would be a perversion of Rubin's obvious purpose of disclosing, as exemplary, the compositions of examples 1 through 4.

■ We feel that the disclosure in Rubin of $MoS_2$ as an anti-friction agent in the packing art in connection with "Kel-F," and the prior art disclosures that "Teflon" and "Kel-F" are functionally interchangeable to a considerable degree, would suggest to one skilled in the art the use of $MoS_2$ with other similar polymers such as "Teflon" if it were desired to reduce friction or add to its lubricity.

For the above reasons, the decision of the board is affirmed.

Affirmed.