**CALIFORNIA RESEARCH CORPORA-TION et al., Appellants,**

v.

**David L. LADD, Commissioner of Patents, Appellee.**

**No. 19375.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 20, 1965.

Decided Feb. 4, 1966.

Mr. Frank E. Johnston, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, for appellants. Mr. Wayne L. Benedict, Washington, D. C., was on the brief for appellants.

Mr. Raymond E. Martin, Atty., U. S. Patent Office, with whom Mr. Clarence W. Moore, Solicitor, U. S. Patent Office, at the time the brief was filed, was on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge.

This is an appeal from the dismissal of an action pursuant to 35 U.S.C. § 145 for a judgment that appellants are entitled to a patent for a "gasoline composition," a knock-resistant fuel for automobiles.

The corporate appellant, the research subsidiary of Standard Oil Company of California, is the employer and assignee of the individual appellants, Barusch et al., who on September 26, 1958, filed application for patent, Serial No. 765,920. Claim 6, the only claim at issue, is for a fuel having two principal ingredients: first, a hydrocarbon base fuel, of specified characteristics, notably high in aromatic hydrocarbons (at least 20%) [1] and having a clear research octane number (i. e. before any additive) of above 90; [2] and second, an additive of from 1 to 4 milliliters (ml) of tetramethyl lead (TML) per gallon.

The claim sets forth that the addition of TML to the specified base fuel produces a motor method octane number and an average road octane number greater than that obtained by adding an equivalent amount of lead in the form of tetraethyl lead (TEL).

The Board of Appeals of the Patent Office affirmed the Examiner's rejection of the claim on the ground that the disclosures in the 1958 Hinkamp patent, #2,855,905, while not constituting anticipation, suffice to show that the claimed invention was obvious to those skilled in the art, within the meaning of 35 U.S.C. § 103. The District Court dismissed the complaint, also relying on the Hinkamp patent, but on a somewhat different basis from that set forth by the Board, as will appear. A motion to open the judgment to take additional testimony was denied. We remand for the purpose of taking additional evidence.

1. We sketch first the nature of the trial as it took shape on the issue of obviousness. This will be useful in focusing subsequent discussion of certain procedural matters. Also, appellants have asked us to determine that the evidence as a whole, under tests judicially approved, shows the claim is not obvious.

Appellants' evidence, much of it undisputed, related the historical efforts to combat "knock," or engine shock, resulting from detonation of the more compressed gasoline-air mixtures attendant upon increase in compression ratios to obtain greater automotive efficiency. Research was begun some forty years ago to obtain mixtures burning rapidly and evenly when highly compressed. The research team headed by General Motors' Midgley discovered at that time that antiknock properties of gasoline were improved by adding certain materials, the best additives being the organo-lead compounds. All organo-lead compounds have antiknock properties, and some 90 compounds have been synthesized and examined, but tetraethyl lead (TEL) was early established as superior.

Increases in octane ratings since Midgley's discovery have been essentially due to the refinery processing improvements of the oil industry, which have become increasingly expensive and difficult to achieve. In the additive field, with minor exceptions such as iron carbonyl and a manganese compound, all progress has been based on TEL. And as of 1958

---

1. The claim and specification is for a base fuel containing, by volume, at least 20% aromatic hydrocarbons, not more than 30% olefins and not more than 80% paraffins and naphthenes.

2. The "octane number" basis of rating knock tendency of fuels was early established through arbitrary assignment of octane number of 100 to isooctane, known as highly resistant to knock, and an octane number of 0 to normal heptane, known as having very little resistance to knock.

Time brought more sophisticated indices: the research octane number (determined in an engine under mild operating conditions), the motor method octane number (more severe operations conditions), and the road octane number (actual operation of an automobile under controlled conditions).

an upper limit of 3 ml TEL per gallon (3.17 grams of lead) was confronting the industry, partly at least because of toxicity problems and the concern of the Surgeon General.

Appellants concede that Midgley taught that TML could be used to improve octane rating above the clear rating, but say that he taught this of many compounds and that he found a superiority in TEL. The evidence showed that Ethyl Corporation tested the antiknock properties of TML and found it poorer than TEL, that they retested it from time to time due to changes going on in automobiles and fuels and reached the same conclusion.[3]

Hinkamp's patent[4] dealt with a side issue—the surface ignition "wild ping" from lead deposits resulting from adding a halide scavenger to the TEL additive. He found relief in adding a certain quantity of crankcase lubricating oil. His specification listed 23 specific examples of antiknock fuels covered by the invention. Example I referred, in addition to the halide fluid and lubricating oil, to an antiknock composition prepared by blending, inter alia, a specified amount of TML and a premium gasoline. The specification further stated (col. 12) that the particular gasoline used in Examples I–XXIII was not critical. To illustrate the invention eight representative gasolines were listed. The hydrocarbon type of Gasoline E had 20% aromatics and satisfied the base fuel specification of appellants' application except as to octane rating to be discussed below.

■ Plainly Hinkamp did not give the same knowledge in substance as appellants and hence does not constitute anticipation. Becket v. Coe, 69 U.S.App. D.C. 51, 55, 98 F.2d 332, 336 (1937). Appellants further say that Hinkamp was merely covering a wide array of possible permutations in connection with the scavenger problem, and that it was in no way obvious that a conjunction of one of a number of examples of antiknock compositions with one of the eight illustrative fuels that happened to have 20% aromatics, would be significant in reaching an improvement over TEL.[5]

■ Appellants' case invoked the "sign posts" advanced by Judge Learned Hand as "objective" indicators of invention.[6] They stress that while the art made repeated references to TML as having virtues as an antiknock agent, it had been referred to as of lesser utility than other lead alkyls and no one in the field prior to appellants had ever suggested it

---

3. This was also the subject of an oral agreement to stipulate by appellants' counsel. But that exchange is inaccurate insofar as appellants' counsel omitted the point important in appellee's conception of the case, that the retesting was due to changes in automobiles and fuels.

4. The Hinkamp patent related to Motor Plus, the eighth of a series of antiknock additives, based on research with TEL, put out by Ethyl Corporation between 1930 and 1955. He was concerned with the fact that although halogen scavengers (bromine and chlorine) combined with TEL overcome excessive lead deposits on spark plugs and exhaust valves, they tend to increase the problem of surface ignition ("wild ping") as lead deposits accumulate on the internal surface of the cylinder and cause ignition before the cylinder reaches the top of the compression stroke.

5. Compare E. I. DuPont de Nemours and Co. v. Ladd, 117 U.S.App.D.C. 246, 252,

328 F.2d 547, 553 (1964); Application of Lemin, 332 F.2d 839 (C.C.P.A.1964).

Appellants similarly reject the significance of a broad reference in a paragraph (col. 12) to a number of "tetra-alkylead" compounds, including TML, as antiknock agents used according to this invention. This paragraph concludes by saying TEL is to be preferred.

Appellants offered proof that a few weeks before they filed their application in 1958 the Technical Director of Ethyl Corporation expressed the view that from their most recent data and earlier experience they would expect TML to be most effective in highly paraffinic gasolines. Ethyl's 1960 brochure, however, confirmed appellants' teaching that TML's effectiveness depends on aromatic rather than paraffinic content.

6. Reiner v. I. Leon Co., 285 F.2d 501, 504 (2d Cir. 1960); Safety Car Heating & Lighting Co., Inc. v. General Electric Co., 155 F.2d 937, 939 (2d Cir. 1946).

as having greater effectiveness than TEL for any fuel. They further stress the undeniable commercial recognition given to appellants' discovery, which admittedly is material, but not controlling.

Assuming this case were to turn on a determination of obviousness, it is the District Court that must make the initial judicial determination. Obviousness is the kind of question that usually turns on the District Court's view of the evidence and its findings will not be set aside unless clearly erroneous.[7] Here the District Court would have to appraise not only appellants' presentation, but also the considerations advanced against appellants' position,[8] embracing, for example, the argument that appellants had not shown that Ethyl Corporation had begun a wholehearted search for substitutes for TEL, (apparently an increase materialized in allowable TEL concentration, from 3 to 4 ml. per gallon) and the suggestion that appellants' discovery would have emerged from the program of retesting TML with new fuels, especially in view of the increase in clear octane ratings of new base fuels developed in a related art.

█ Appellants stumbled upon their discovery of the virtues of TML by acci-

dent, in the course of an experiment aimed at testing an acetate additive.[9] The law has room for luck, and serendipity is certainly consistent with patentability. Yet the burden is on the applicant for a patent monopoly. The happy accident avoids the rejection that is the lot of the palpable drudge. But it also lacks the impetus to a grant that comes from the exhilarating account of the resourceful applicant who deliberately fashions a new approach for an old problem. The ability to profit from a happy accident often reflects invention. But the question arises whether the same path may have been trod through the patience of one merely "skilled in the art."

We have said enough to show why we reject appellants' request for a ruling at this time on the issue of obviousness. If the issue arises on remand, as it may, it will be for the District Court's determination, subject to limited review.

2. We turn to the procedural consequences of the fact that appellants were able to upset a factual premise underlying the Board of Appeals' reliance on Hinkamp.[10] The Board stated that there was no lack of obviousness in combining the TML in Hinkamp's Example I with

---

7. Baenitz v. Ladd, No. 19275, D.C.Cir. January 6, 1966; Stieg v. Commissioner, 122 U.S.App.D.C. ——, 353 F.2d 899, November 18, 1965; Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 156, 229 F.2d 37, 39, cert. denied, 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491 (1956).

8. Including those outlined in the Examiner's answer before the Board of Appeals.

9. In September 1958 Ethyl Corporation's Technical Director said that "although they have always been interested in using a more volatile lead compound, TML has never been seriously considered because of its lower effectiveness compared to TEL and hazardous nature."

Appellants' associate Denison, responsible for long-range research, testified that at one time he suggested that with high compression ratio engines lead compounds with more thermal stability than TEL should yield greater efficiency. He recommended use of a substance which

is an aryl lead rather than alkyl compound, but in the research program appellants also tested TML. The results were discouraging. The record does not indicate how or why.

Appellants were simultaneously conducting research and exploring the addition of acidic compounds to TEL, and it was there that the happy accident leading to TML took place. Results from tertiary-butyl acetate, an ester of acetic acid, were promising in a single cylinder engine, but disappointing in multi-cylinder engines. It was hypothesized that improvement would be obtained by using TML, whose boiling point was the same as the acetate. TML and TEL were both used as reference points for the acetate. It was discovered that not only did TML work well, but that under those conditions it worked better than TEL.

10. The Board also relied on the DeWitt patent, but the District Court found its interpretation of that patent "strained" and put it to one side.

his Fuel E, which Hinkamp stated had a research octane number of 93.2. When appellants objected that this rating was not of the clear fuel but of the fuel already leaded, the Board ruled that appellants had not shown this by actual test data and their unresolved doubt could not result in withdrawal of the reference.

At the trial appellants proved that the octane ratings reported in the Hinkamp table related to fuel with lead added. This was demonstrated both by the witness' analysis within the four corners of the Hinkamp patent,[11] an analysis rejected by the Board, and by extrinsic evidence, including an internal document of Ethyl Corporation. The District Court found that Hinkamp's fuel was not over 85 clear octane rating.

However, the District Court's opinion stated that the Patent Office rejection on the Hinkamp reference "was not inconsistent with the evidence." It continued:

> The defendant's contention that the number 90 is not critical was substantiated by the record in the Patent Office. Even before the Court the plaintiffs were hard put to contend that the number 90 was a critical feature of the invention.

■ A Patent Office determination that the discovery in the application is obvious "to a person having ordinary skill in the art" (35 U.S.C. § 103), is entitled to great weight, and a presumption of validity, since it lies in an area of the special expertise of the Patent Office. Although a proceeding in the District Court under 35 U.S.C. § 145 is a trial de novo, the action of the Patent Office must be affirmed in the absence of evidence carrying "thorough conviction" that requires a grant.[12]

■ Where, however, the explicit assumptions of the Patent Office are contradicted by the undisputed evidence adduced in court, the proof meets at least some of the burden cast on plaintiff by the presumption of correctness. Cf. Stradar v. Watson, 100 U.S.App.D.C. 289, 244 F.2d 737 (1957). Where complicated technical questions are involved and the assumption of the Patent Office is vitiated by the court's ruling, the District Court may stay its proceeding in order to obtain the benefit of the Patent Office expertise in the light of the new condition developed on the record. International Standard Elec. Corp. v. Ooms, 81 U.S.App.D.C. 215, 157 F.2d 73 (1946). Compare United States v. Carlo Bianchi & Co., 373 U.S. 709, 717–718, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).[13]

The District Court may choose not to invoke this procedure—because the tech-

---

11. Fuel F in this table was also described in Table IV, where it was expressly identified as having TEL content of 3 cc per gallon. This analysis was rejected by the Board as "speculative" as to Fuel E.

12. The doctrine requiring "thorough conviction" to overturn the determination of the specialized Patent Office tribunal in a suit under R.S. § 4915, now 35 U.S.C. § 145, was approved by the Supreme Court in Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (1894). Its vitality is attested by numerous recent rulings. See cases cited *supra*, note 7; and also Reynolds v. Aghnides, 122 U.S.App.D.C. —, 356 F.2d 367, January 20, 1966; Zenith Radio Corp. v. Ladd, 114 U.S.App.D.C. 54, 57, 310 F.2d 859, 862 (1962); Watson v. Bersworth, 102 U.S.App.D.C. 187, 190, 251 F.2d 898, 901 (1957).

13. The importance of Patent Office consideration was recently underscored when the Judicial Conference disapproved S. 1971,. 89th Congress, which proposes to remove the initial determination of the question of "obviousness" from the jurisdiction of the Commissioner of Patents and make it a matter solely for judicial determination after the grant of a patent. The Committee of the Judicial Conference objected that the district courts would be called upon to decide initially the issue of obviousness without the advantage of research and reasoning of the Patent Office. Report of the Proceeding of the Judicial Conference of the United States, Sept. 1965, pp. 58–59.

Further proceedings in the Patent Office may be appropriate even after a judgment under 35 U.S.C. § 145 upholding the complainant's theory. See Hoover Co. v. Coe, 325 U.S. 79, 84, 88–89, 65

nical questions do not seem too forbidding or because of other considerations of time and economy of judicial administration. Both these considerations may have been operative in this case, for it was tried to a judge with unusual technical qualifications, including service on the Court of Customs and Patent Appeals, and the conclusion as to the error of the Patent Office apparently did not crystallize until all the proof had been submitted.

If the District Court goes ahead with the de novo proceeding, its decision may take into account both the burden of proof that attaches to any plaintiff, and the particular burden inherently resting on a party that seeks to change an administrative result. However, the presumption of correctness normally accorded to administrative findings is not available where an issue has not been the subject of a Patent Office finding,[14] or an assumption underlying the Patent Office finding is demonstrably inaccurate in a material degree.

The District Court does not seem in this case to have relied on an impermissible presumption of correctness. But we are not clear as to the basis of its determination as to criticality, or more exactly, lack thereof. The District Court stated that the contention that 90 is not critical is "substantiated" by the record in the Patent Office, but there was no evidence before the Patent Office showing lack of criticality or for that matter its presence.

Appellee argues that the District Court's opinion is supportable as a determination that appellants' application was defective in failing to disclose that the 90 octane rating was a critical element in the combination. We hesitate to let the case turn on that possibility, since it is not clear that this was the ground adopted by the District Court, and it looks in a direction opposite to that which seems to have been assumed in the Patent Office. The Board's effort to sustain a 90 value for Hinkamp's Fuel E at least strongly suggests that it read the application as teaching that the clear research octane number of at least 90 is critical. The statute, 35 U.S.C. § 112, is satisfied by a disclosure which advises in substance that a limitation is critical, even though it is not expressly stated to be "critical." Helene Curtis Industries v. Sales Affiliates, 233 F.2d 148, 153 (2d Cir. 1956).

Assuming disclosure in a claim that a limitation is critical, the applicant or patentee has the further burden of showing that the limitation is critical in fact.[15] The District Court may well have predicated its dismissal of the complaint on the basic principle that plaintiffs had failed to carry the burden of proof on an essential element of their case. But even such a generally unobjectionable ruling would not suffice to dispose of the instant case in view of the procedural matters now taken up for discussion.

3. After entry of the judgment and opinion of the District Court, appellants filed a motion under Rule 59 F.R.Civ.P. to take additional testimony. The an-

S.Ct. 955, 957, 89 L.Ed. 1488 (1945), which also points out that the remedies under §§ 141 and 145 of 35 U.S.C. "[were] alternative remedies resulting in the same sort of relief so far as concerns the further prosecution of the application in the Patent Office."

14. Compare the rule that where prior art was not considered by the Patent Office, the statutory presumption of validity ordinarily attaching to the granting of a patent is weakened. Scripto, Inc. v. Ferber Corp., 267 F.2d 308 (3d Cir.), cert. denied, 361 U.S. 864, 80 S.Ct. 122, 4 L.Ed.2d 104 (1959).

15. The District Judge was presumably familiar with this rule, announced in opinions, including his own, of the Court of Customs and Patent Appeals. In re Moreton, 295 F.2d 945, 49 CCPA 760 (1961); Application of Eisenhut, 245 F.2d 481, 44 CCPA 974 (1957); In re Swenson, 132 F.2d 1020, 30 CCPA 809 (1948).

Application of Luvisi, 342 F.2d 102 (C.C.P.A.1965), relied on by appellants, is not to the contrary. It merely holds that there is no burden to prove "criticality" with respect to a limitation the applicant does not claim to be critical.

nexed affidavit of Dr. Clayton, with exhibits, asserts that the engine tests in appellants' files of the underlying research show that TML is used to advantage only when the clear octane number is at least 90. Appellants do not contend that the evidence is newly discovered but say that the issue of "criticality" was not inserted until after the trial had ended, and that they should be allowed effectively to present their side of the issue.

Generally a plaintiff suing for a patent on the ground that the discovery is not obvious may fairly be asked to be ready to show that his claim represents a patentable distinction over the prior art. This would normally embrace evidence as to the issue of criticality, since that issue is inter-related with the issue of obviousness. Helene Curtis Industries v. Sales Affiliates, supra, 233 F.2d at 152. Where the claimed advance over the prior art lies in focusing on the special attributes of a sub-genus that is part of a genus already broadly disclosed, there is particular need to show that the limitation is critical. Application of Lemin, 332 F.2d 839 (C.C.P.A.1964). The criticality issue turns on whether the claim is an advance over products and processes previously known and sufficiently distinctive to warrant a patent monopoly. Justheim v. Ladd, 122 U.S.App.D.C. ——, 353 F.2d 902, November 10, 1965. There must be a distinctive physical, here a chemical, discovery. A mere location of optimum conditions and characteristics, however useful, is said not to warrant a patent monopoly.

Some opinions put it that the difference from the prior art is not critical unless the difference is one of kind and not merely degree.[16] This may be a better literary symbol than scientific concept. Most if not all important differences prove on nice analysis to be merely differences of degree. Compare Rideout v. Knox, 148 Mass. 368, 19 N.E. 390, 2 L.R.A. 81 (1889) (Holmes, J.). Even small differences in art may establish patentability when the difference is distinctive, has great utility and is not obvious. Reiner v. I. Leon Co., 285 F.2d 501 (2d Cir. 1960). But there must be enough of a difference so that, in the language of the old "alloy" cases which we quoted in Becket v. Coe,[17] there emerges a new product or new characteristic which results in new, or substantially enhanced, qualities of utility.

Inter-related though they may be, the issues of obviousness and criticality are analytically distinct. It is at least plain that obviousness may be disputed though criticality is conceded. In this case the decision of the Board of Appeals asserting obviousness may reasonably be taken as reflecting an assumption of criticality. Why would the Board have taken such pains to justify its assuming that Hinkamp's Fuel E was over 90 clear octane, wrongly as it developed, unless it felt that this was a critical feature of appellants' discovery?

The assumption of the Board of Appeals is not binding in this de novo proceeding on either counsel or the court.[18] But it has a bearing on the issue of whether plaintiff was taken by sur-

---

16. E. I. DuPont de Nemours and Co. v. Ladd, supra note 5; Helene Curtis Industries v. Sales Affiliates, 233 F.2d 148, 152 (2d Cir. 1956); In re Britton, 115 F.2d 249, 252, 28 CCPA 726 (1940); In re Richter, 53 F.2d 525, 527, 19 CCPA 756 (1931).

17. Becket v. Coe, 69 App.D.C. 51, 55, 98 F.2d 332, 336 (1937), quoting Bethlehem Steel Co. v. Churchward Int'l Steel Co., 268 F. 361, 364 (3d Cir. 1920).

18. The defendant may certainly rely on references of record even though not considered by the Patent Office. Indeed he could even do this on appellate review of a Patent Office rejection under 35 U.S.C. § 103. In re Azorlosa, 241 F.2d 939, 44 CCPA 826 (1957), pointing out that the Court of Customs and Patent Appeals is limited to the evidence produced before the Patent Office but not by the arguments that happen to have been made in the Patent Office with regard to that evidence.

A proceeding in the District Court under 35 U.S.C. § 145 is a proceeding de novo in equity, and while limited to the

prise. Certainly in this day and age surprise should not materially affect the result in this kind of a proceeding, which is concerned with the issuance of a legal monopoly and not merely issues of *meum* and *tuum*.

The criticality issue was not raised in the answer. There was no pre-trial proceeding or order defining the issues.[19] In the opening statements both counsel agreed the issue was obviousness. Since the discovery in this case was a happy accident, as already noted, the recital of the discovery did not automatically lead to an analysis of criticality. Appellants did not purport to offer separate proof that 90 octane was critical, presumably reflecting an understanding that this was not in dispute. On cross-examination appellee asked whether appellants had conducted tests on gasoline below 90 rating but otherwise meeting the requirements of the claim. The witness said he supposed they had but he had no personal knowledge. The matter was then dropped. Taking this as a reference by

appellee to the issue of criticality, it was short and exploratory.[20] Counsel and the court continued to focus on the ultimate obviousness issue. In view of calendar considerations the court cautioned counsel against protracted presentation on side issues and subsidiary matters.

These considerations do not preclude either counsel or the court from later noticing a different issue or taking a different view of the state of the proof. But they suggest that plaintiffs should be given an opportunity to present the evidence in the California files, material which might reasonably have been left at home as being remote from the controversy as approached by the Government's officials.

We think the interest of justice would best be served by remanding to the District Court, with instructions to grant appellants leave to present the evidence referred to in their motion,[21] and to conduct such further proceedings as the court may deem advisable. This is the

---

invention claimed in the Patent Office it is heard not only on the record of that office but on all competent evidence adduced and heard on the merits. Thus with appropriate foundation for its receipt, the District Court may rely on an additional patent not pleaded in defendant's answer. American Steel & Wire Co. v. Coe, 70 App.D.C. 138, 105 F.2d 17 (1939).

Although each side "may strengthen its case with additional material" the plaintiff may not submit for the first time evidence which he was negligent in failing to submit to the Patent Office, see Killian v. Watson, 121 U.S.P.Q. 507 (D.D.C.1958). In short, the District Court proceeding may not be conducted in disregard of the general policy of encouraging full disclosure to administrative tribunals, cf. United States v. Carlo Bianchi & Co., 373 U.S. 709, 716–717, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); National Broadcasting Co. v. United States, 319 U.S. 190, 227, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).

19. Rule 11(e) of the Rules of the United States District Court for the District of Columbia generally provides for automatic assignment of actions for pretrial proceeding. However, it expressly sets forth an exception in the case of an

action to obtain a patent wherein the Commissioner of Patents is the sole defendant. The exception from automatic pre-trial presumably takes into account the knowledgeability of the specialized bar involved. This, of course, does not preclude either party or the court from initiating pre-trial proceedings to obtain names of expert witnesses, formulate issues, agree upon documents, etc. Or counsel may by agreement communicate directly on such matters without the formality of a pre-trial proceeding.

20. In context it looked like an effort by defendant's counsel, confronted with the evidence that Hinkamp's Fuel E had a clear octane number below 90, to explore whether this was critical. It is not insignificant that at the trial defendant was asking the questions, as contrasted with the approach in brief of relying on the plaintiffs' failure to meet their burden of proof.

21. We are not to be taken as having concluded that the affidavit and exhibit should make a difference in result, but rather that the information seems sufficiently material on the issue of criticality, which is presently a void in the evidence, to warrant consideration by the District Court.

course we have followed where issues were injected in defendant's brief after trial. Douglas Aircraft Co. v. Mueller, 107 U.S.App.D.C. 321, 277 F.2d 351 (1960). While that is not precisely the fact here we think this case has special circumstances that fairly call for application of that procedure. The latitude here accorded plaintiffs to adduce evidence is perhaps the other side of the coin which places upon them a heavy burden of proof and persuasion. On remand appellants have the burden of satisfying the court on the issue of criticality. Even if that burden is met, appellants will not be entitled to relief unless the court concludes that their proof carries thorough conviction negating obviousness. We make no intimation on either issue.

Reversed and remanded.

We note without comment that Dr. Clayton's exhibits seem to show at least one instance of a fuel with clear octane rating below 90 which was nevertheless more effective with TML than TEL.