**CALIFORNIA RESEARCH CORP. et al., Plaintiffs,**

v.

**David L. LADD, Commissioner of Patents, Defendant.**

**Civ. A. No. 2316–63.**

United States District Court
District of Columbia.

Nov. 15, 1966.

---

See also D.C., 238 F.Supp. 428.

Frank E. Johnston, San Francisco, Cal., and Wayne L. Benedict, Washington, D. C., for plaintiffs.

Joseph Schimmel, and Raymond Martin, Washington, D. C., for defendant.

## OPINION

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents under 35 U.S.C. § 145, to authorize the issuance of a patent on an application that has been rejected by the Patent Office. The application was filed in behalf of Maurice R. Barusch and others, on September 26, 1958, Serial Number 765,920, for a composition of gasoline.

The invention lies in the field of antiknock gasoline fuel for motor vehicles. Specifically it consists of the use of tetramethyl lead in connection with a gasoline having certain properties, and a particular composition, namely, a specified percentage of aromatics and a specified percentage of olefins. The gasoline also must have an octane rating of not less than 90, in order to be suitable for use in this combination. It is claimed that this combination gives a superior type of antiknock fuel.

It must be noted that the antiknock quality of gasoline is accorded to it by the addition of a substance known as tetraalkyllead, which contains a certain amount of lead as its name indicates. There are various varieties of this compound, among them being tetraethyl lead, known as TEL, and tetramethyl lead, known as TML. The last mentioned is involved in this case.

This action was first tried before another Judge of this Court and judgment was rendered for the defendant. The basis of this decision was that there was

no critical significance in the figure 90 in connection with the octane ratings and that without the rating of 90 signifying a line of demarcation, the alleged invention was obvious, and therefore not patentable, California Research Corp. et al. v. Ladd, D.C., 238 F.Supp. 428. Subsequently, a motion was made by the plaintiff for leave to reopen the case in order to adduce additional evidence of the critical significance of the octane figure 90. This motion was denied. On appeal the judgment was reversed on the ground that the motion to reopen the case should have been granted, D.C. Cir., 356 F.2d 813.

The question then arose whether it was the intention of the Court of Appeals to grant a new trial on all issues or to limit the new hearing solely to the question of the critical nature of the octane rating of 90. It is true that the opinion of the Court of Appeals does not grant a new trial in express words, but it indicates that in addition to the question as to the critical nature of the rating 90, the issue of obviousness of the alleged invention should also be considered in conjunction with it. The Court of Appeals further stated that the appellants should be granted leave to present evidence referred to in their motion and to conduct such further proceedings as the Court may deem advisable. In view of these considerations, this Court was of the opinion that it was granted authority by the Court of Appeals to conduct a new trial. Otherwise, the task of the Court would have been practically to fit one piece of a jigsaw puzzle into a puzzle that had already been partially solved. This would hardly have been in the interest of justice. Accordingly this trial has been conducted as a new trial on all issues.

The parties stipulated, however, that all evidence introduced at the first trial might be considered as part of the evidence at this trial without being repeated or reintroduced. Some very vital additional evidence was also adduced in this trial.

There are two issues in this case. One is whether the octane rating of 90 is of critical significance, that is, whether it is a definite line of demarcation or whether it is just a random figure from which there may be deviations. The second issue is whether the invention was obvious, that is, whether it was the product of the inventive faculty or of the mechanical skill of a person reasonably skilled in the art.

The Patent Office quite obviously did not regard the figure 90 as of any significance, and well it might not have, because apparently there was not sufficient evidence on that point introduced before the Patent Examiner. The Patent Office relied principally on the fact that the use of TML had been known in connection with antiknock fuels, as shown principally, although not solely, in the patent to Hinkamp, Number 2,855,-905, issued on October 14, 1958. The Hinkamp patent discloses the use of various compounds in connection with antiknock fuels and illustrates the use of tetramethyl lead as one of them. The decision of the Board of Appeals of the Patent Office affirmed the rejection of the Examiner and likewise held that the claimed composition would be obvious because of the prior art.

It is the contention of the plaintiffs that if tetramethyl lead is added to the fuel of the type referred to in the claim, which has an octane rating of at least 90, a much better result is obtained than if tetraethyl lead is used as an additive, while the opposite result is reached if the octane rating of the gasoline is less than 90. It is further claimed by the plaintiffs that this was the crux of the invention, in light of the fact that previously tetramethyl lead was considered inferior to tetraethyl lead for the purpose here involved. In order to demonstrate and prove the critical nature of the rating of 90 and its importance as a line of demarcation, the plaintiffs introduced evidence of 127 experiments, in each of which tetramethyl lead proved superior if the octane rating of the gasoline was 90 to start with, and that tetra-

ethyl lead was superior if the octane rating was lower. With two or three deviations along the borderline these results were obtained in each one of the experiments. This information was not available to the Patent Office. The Court concludes that the critical significance of the figure 90 has been established.

This brings us to the second question, namely, whether the invention was obvious. It must be observed that the Patent Office held that the invention was obvious because it did not attach any critical significance to the figure 90. This Court would be inclined to agree with the Patent Office if the critical importance of the octane rating 90 as a line of demarcation had not been proved at this trial. That proof, however, changes the situation completely. In fact, the argument of Government counsel was based entirely on the premise that there was no critical significance in the figure 90.

■ We can go a step further on the question of obviousness of the invention. It must be borne in mind that the Patent Law covers two types of results, discoveries and inventions. They are often very similar, but they are two distinct concepts. The Constitution, in Article I, Section 8, authorizes the Congress to grant to inventors the exclusive right to their discoveries. It does not use the word "inventions". The pertinent statute uses two terms, both inventions and discoveries, 35 U.S.C. § 101.

■ A discovery is an unintended or unexpected result found by the discoverer. An invention, on the other hand, is a product of the intellectual efforts of the inventor, a result that he develops by the use of his mind and possibly with a series of experimentations. If the alleged invention involves the use of the inventive faculty, it is patentable. If it involves merely the use of routine mechanical skill, it does not rise to the dignity of patentability. These remarks have been made in view of the fact that in this case we are dealing with what is claimed to be a discovery rather than an invention, and discoveries are much less common than inventions.

■ The testimony is to the effect that while the research group that developed the invention of this application was working on something else in the field of antiknock fuels, they accidentally discovered that if fuel of the type covered by the claim, having an octane rating of at least 90, were combined with tetramethyl lead, a much better result would be obtained than with tetraethyl lead, something that was contrary to all previous thought. A long period of experimentation followed in order to establish the validity of this discovery. Very significant testimony on this point was given by Doctor George H. Denison and Doctor Clayton, both of whom impressed the Court by their experience, achievements, and probity. The Court accepts their evidence.

Manifestly, under the circumstances, this discovery could not have been obvious. Research workers in this field had been experimenting with tetraethyl lead and tetramethyl lead as well as other compounds for many years, beginning sometime in the 1920's. It was not until the date of the accidental discovery in this instance, in May 1958, that the result involved in this application was unexpectedly reached. This history in itself refutes the suggestion that the result would have been obvious to any person mechanically skilled in the art from a study of the prior art.

There was evidence also of commercial success of the invention. This circumstance in itself does not, standing alone, negative obviousness, but taken with the other facts just stated, namely, that after years of research the invention was stumbled on more or less accidentally, and then immediately put to use, would lead to the conclusion that the invention was not obvious.

It is unfortunate that this evidence was not available to the Patent Office, because it is not unlikely that the application might not have been rejected

if this testimony in all its details had been presented to the Patent Office. Much of it, however, was not in existence until long after the patent application was filed, and, therefore, the failure to produce it before the Patent Office Examiner was not due to any neglect on the part of the inventors.

The Court concludes, therefore, that the octane rating of 90 is an essential element of the invention and not a mere arbitrary figure, and that it is a significant and critical line of demarcation above which tetramethyl lead is valuable and useful and below which it is not. The Court further concludes that this discovery was not obvious in the light of the prior art and that it constitutes a patentable step forward in the development of the art. In view of these considerations the Court will grant judgment for the plaintiff.